IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM T. WULIGER, Receiver,

                              Plaintiff,              Case No. 3:02 CV 1513

              -vs-
                                                      MEMORANDUM  OPINION
STAR BANK, et al.,

                              Defendant.

KATZ, J.

        This matter is before the Court on Defendants' motion for judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c) and the attendant replies and responses thereto.  For the reasons

stated therein, the Defendants' motion is denied.

**PROCEDURAL HISTORY**

        As the parties are well acquainted with the genesis of this litigation, the Court will only

briefly address the procedural history of this case.   Initially, the Court granted in part and denied

in part Defendants'motion to dismiss.  (Doc. No. 62.)  Thereafter, Plaintiff amended the complaint

and Defendant again renewed its motion to dismiss.  The Court again granted in part and denied in

part, Defendants' motion.  (Doc. No. 121.)  Approximately two months later, in the *Liberte v.

Capwill*[1] litigation, the Court considered the motion by the Intervenor Banks[2] to reconsider the

Receiver's standing relative to the claims of the investors.  The Court determined the issue

---

[1]
 *Liberte Capital Group v. Capwill*, Case No. 5:99 CV 818 (N.D. Ohio).

[2]
 Those Intevenor Banks included: Liberty Bank, N.A. ("Liberty Bank"), U.S. Bancorp (as
successor to Firstar Bank f/k/a Star Bank, N.A.) ("Star Bank"), and KeyBank National
Association ("KeyBank").  *Liberte*, Doc. No. 2330.

presented as moot since the claims remaining in the bank litigation were "asserted on behalf of the entities, VES and CFL and not the investor classes." *Liberte*, Doc. No. 2427 at p.3.

In its dispositive motion, the Defendants argue for dismissal on the basis that all claims are barred by the applicable statute of limitations in Articles 3 and 4 of the Ohio Uniform Commercial Code.   As the parties continue to dispute the viability of the investor claims, the Court first addresses this issue.

### INVESTOR CLAIMS

It is the Plaintiff's position that the investor claims still remain and the Receiver has authority to pursue such claims.  However, to an extent that such claims are presented on behalf of the investors, the   Sixth Circuit recently held that the Receiver is without authority to proceed forward on those claims.  *See Liberte Capital Group, LLC v. Capwill*, 248 Fed. Appx. 650 (6th Cir. 2007), *reh'g denied*, (January 23, 2008).  To the extent that such claims are premised, they are dismissed for lack of standing.  The Court now turns to the claims remaining on behalf of VES and CFL.

### DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

*A.  Fed. R. Civ. P. 12(c)*

On a motion for judgment on the pleadings, all well-pleaded allegations of the plaintiff must be taken as true, the court must construe the complaint in favor the plaintiff and test the sufficiency of the complaint to determine whether the claims are viable. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65 (2007).   Judgment is granted only where there is no material issue of fact involved and the moving party is entitled to judgment as a matter of law.  *Paskavan v. City of Cleveland Civil Service Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991).

*B.  Remaining Claims*

The claims which remain pending against Star Bank include Aiding and Abetting (Count Three), Negligence (Count 5),  Breach of Duty of Good Faith (Count 6), Ohio Conspiracy Claims (Count 8),and Contribution & Indemnity (Count 9).  (Doc. No. 77.)   The parties dispute the nature of the pleadings which drives the applicable statute of limitations.  Star Bank argues that the lack of any fraudulent claims or averments negates the applicability of any statute of limitations other than that of the Ohio Uniform Commercial Code as all of the claims arise out of the bank-customer relationship.  The Receiver opposes that position on the basis that fraudulent conduct is averred in the complaint and necessitates application of the four year statute of limitations.

1.    Aiding and Abetting (Count Three).

The Receiver submits the count alleging aiding and abetting contains averments of fraud and fraudulent conduct incorporated by prior allegations in the complaint.  For example, the amended complaint cites to unlawful acts and omissions by the Star Defendants:

> willingly and/or negligently allowed Capwill and the JAC Enterprise to use Star Bank for money laundering; actively and/or negligently facilitated that money laundering because Capwill was a significant Star customer; aided and abetted said money laundering; received stolen property or other wrongfully acquired property from Capwill; aided and abetted Capwill's efforts to convert estate property; failed to file Suspicious Activity Reports ("SARs") regarding Capwill and his affairs as required by relevant banking laws, or alternatively, filed SARs regarding Capwill but nonetheless continued to do business with him; and generally failed to adhere to appropriate standards for banks and financial institutions, including but not limited to the standards of a prudent and reasonable banker.

(Amended Compl. at ¶16.)  The Star Defendants, included as part of the Enterprise, are also alleged to have engaged in acts of mail fraud, wire fraud, receipt of converted property, travel act fraud, money laundering, and fraudulent transfers.  (Amended Compl. at ¶40.)  The Star

3

Defendants are also included to have "acted with intent to defraud, steal, and/or commit other illegal wrongs" as part of the Enterprise.  (Amended Compl. at ¶¶43-44.)

The Defendants note these allegations which preceded the claims were made under RICO, which were dismissed not once but twice and should be discounted.  However, as the standard under Rule 12 requires the Court accept the factual averments as true, the dismissed legal conclusions are ignored but these facts are incorporated by reference into the remaining counts and may be considered.

To determine whether the pleadings are in compliance with Fed. R. Civ. P. 9(b), the Court considers the balance between Rules 8 and 9:

> [W]hen deciding a motion to dismiss under Rule 9(b) for failure to plead fraud with particularity, a court must also consider the policy favoring simplicity in pleading, codified in the "short and plain statement" requirement of Federal Rule of Civil Procedure 8.  As we have noted, "Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather the two rules must be read in harmony." *Michaels Bldge. Co.*, 848 F.2d at 679.  On the other hand, a district court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

*Sanderson v. HCA - The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. ), *cert. denied*, 127 S. Ct. 303 (2006).

In this instance, the sixty-three page amended complaint sets forth sufficient detail to meet the threshold requirement under Rule 9(b).  Although Defendants argue that the lack of affirmative acts outside of standard banking services are not alleged, the amended complaint states the Defendants provided Capwill private banking services based on the size and scope of his dealings, turning a blind eye to multiple transactions in which Defendants engaged both "willingly and negligent[]" conduct.   The amended complaint lists over one hundred financial transactions

relating to these accounts and large dollar transactions, each indicating the account name, account number, date, amount transferred and recipient.  This detail comports with the mandate of Rule 9(b).

To support a claim of aiding and abetting tortious conduct requires two specific elements:

(1) knowledge that the primary party's conduct is a breach of duty and (2) substantial assistance or encouragement to the primary party in carrying out the tortious act.

*Pavlovich v. National City Bank*, 435 F.3d 560, 570 (6th Cir. 2005), citing *Aetna Cas. & Sur. Co.*, 219 F.3d at 532-33 (6th Cir. 2000) (quotation therein omitted).   The amended complaint makes sufficient allegations to support an inference that Defendants were aware of Capwill's fraudulent actions based upon the personal banking services.  *See e.g.  In re National Century Financial Enterprises, Inc.*, 504 F.Supp.2d 287, 320 (S.D. Ohio 2007).  Such an allegation would support a cause of action outside of standard banking practices, if supported by the evidence.   Accordingly, the claim contained in count 3, aiding and abetting sets forth a plausible claim which must survive a Rule 12(b) challenge.

    2.    <u>Negligence (Count Five), Breach of Duty of Good Faith (Count Six) and Ohio Conspiracy Claims (Count 8)</u>.

In the Plaintiff's surreply, he contends the Defendants' purported bad faith removes these claims from typical negligence actions as the Defendants' actual knowledge is the critical link which transforms these claims from those of mere negligence to one "which imports a dishonest purpose and implies wrongdoing or some motive of self-interest."  *Master Chemical Corp. v. Inkrott*, 55 Ohio St.3d 23, 31 (1990) (quotation omitted).   Again, the Defendants' position is that the transactions arose out of the bank-customer relationship, requiring a closer scrutiny of the true nature of these actions.

5

"Where the duty allegedly breached by the defendant is one that arises out a contract, independent of any duty imposed by law, the cause of action is one of contract. . . . By contrast, where the duty allegedly breached by the defendant is one that is imposed by law, whether or not it arises out of a contract, the cause of action is not based on contract, but rather on tort." *Schwartz v. Bank One, Portsmouth, N.A.*, 84 Ohio App.3d 806, 810-11 (1992).

In the present action, Plaintiff does not make claims for forged or converted instruments. He concedes that Capwill was the fiduciary of VES and CFL.  It was Capwill's actions, what the Defendants' knew about Capwill's status and whether they were deliberately ignorant of Capwill's wrongful actions in violation of his fiduciary status, coupled with the private banking services afforded to a significant customer based upon the size and number of accounts.  In this Court's view, the duties breached do not merely arise out of the contract but are imposed by the common law or statutes.   The same can be said of the claim contained in count nine, the Ohio conspiracy claims, as they also involve violation of duties imposed by law.

Having determined these causes of action involve tort claims, the Court now considers the applicable statute of limitations.

*B. Statute of Limitations*

The Defendants request dismissal on the basis that the bank-customer relationship dictates application of the Ohio Uniform Commercial Act, specifically, Rev. Code § 1304.09 which states:

> An action to enforce an obligation, duty, or right arising under sections 1304.01 to 1304.40 of the Revised Code shall be brought within three years after the cause of action accrues.

However, as previously determined the claims alleged implicate violations imposed by law and outside of the contract, hence the Court cannot apply §1304.09 to the remaining claims in the amended complaint.   As the aforementioned counts implicate the willful ignorance and

6

complicity of Defendants in the furtherance of Capwill's misdeeds, a reading of the amended complaint reflects it is grounded essentially in fraud.  For this reason the application of the four year statue of limitations as contained in §2305.09 is appropriate.

Ohio recognizes that the doctrine of equitable tolling may be used to avoid the inequitable use of the statute of limitations.  *Livingston v. Diocese of Cleveland*, 126 Ohio App.3d 299 (1998).

This case was filed on August 1, 2002.   As all the parties to this litigation are aware, both VES and CFL were wholly-owned by Capwill.  Contemporaneous to this status, Capwill was the escrow agent for Liberte Capital Group and Alpha Capital Group.  The escrowed funds of investors were in the control of Capwill and his wholly-owned companies.  The *Liberte* litigation did not commence until April 1999 and a receiver was appointed for VES and CFL in July 1999.  However, the receiver did not have control over Capwill's bank records until November 1999.  Consequently, the earliest the receiver for CFL and VES would have known about the bank activities was at the end of 1999.  The receiver was not authorized to pursue claims against the banks until May 2002.

This particular set of circumstances and the unusual evolution of the *Liberte* litigation is such that it renders the situation exceptional and application of the doctrine of equitable tolling appropriate.  Until there was an appointment of a receiver and access to the relevant bank accounts, it cannot be said that there was notice of what cause of action existed nor was it capable of being asserted until the receiver was able to examine those records.   Based upon these circumstances, the Receiver acted as diligently as possible in attempting to preserve the legal rights of VES and CFL.  A conservative application of the equitable tolling doctrine commencing at the end of 1999, in the light of these particular circumstances, is appropriate.  As the complaint

was filed within four years of November 1999, the claims therein are timely and the parties may proceed to discovery on the remaining claims.

## CONCLUSION

For the reasons stated above, the Defendants' motion for judgment on the pleadings (Doc. No. 130)  is denied.  The Court will conduct a telephonic status conference on June 9, 2008 at 9:00 a.m.

IT IS SO ORDERED.

    *S/ David A. Katz*    
DAVID A. KATZ
U. S. DISTRICT JUDGE

8